# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2021

Lyle W. Cayce
Clerk

No. 21-20132

SureShot Golf Ventures, Incorporated,

*Plaintiff—Appellant*,

*versus*

Topgolf International, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-1738

Before Jones, Smith, and Haynes, *Circuit Judges*.
Per Curiam:*

SureShot Golf Ventures, Inc. appeals the dismissal of its antitrust claims related to Topgolf International, Inc.'s acquisition of Protracer, a developer of innovative golf ball tracking technology. For the reasons set forth below, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20132

## I.     Background

Topgolf operates golf entertainment centers in the United States and internationally, offering customers point-scoring golf games, food and beverage services, entertainment, and other amenities. SureShot formed to compete with Topgolf and hoped its golf entertainment centers would attract customers away from Topgolf, reducing Topgolf's market share and "eliminating Topgolf's ability to set a monopoly price." SureShot invested significant time and resources developing its business which included technology from an entity called Protracer. To access the technology, SureShot entered into a licensing agreement (the "Frame Agreement") with Protracer in April 2015. Following an initial five-year term, the Frame Agreement would automatically renew for another year unless either party gave advance notice of termination.

Topgolf acquired Protracer in May 2016. According to SureShot, Topgolf acquired Protracer to foreclose the market to SureShot and other competitors. SureShot asserted that Topgolf was "unwilling to license the technology to SureShot under terms that would allow SureShot to build its business around the technology." SureShot went out of business in 2016 but sued Topgolf for antitrust violations in 2017, arguing that Topgolf refused to give assurances that it would extend or renew the licensing agreement after expiration of the initial term. *See SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, No. H-17-127, 2017 WL 3658948, at *1–2 (S.D. Tex. Aug. 24, 2017), *aff'd as modified*, 754 F. App'x 235 (5th Cir. 2018) (per curiam). SureShot specified that when it met with Topgolf to seek assurances, a Topgolf executive stated: "If I was in your position, I would look for alternatives." *Id.* at *1. Importantly, however, Topgolf did not terminate the Frame Agreement, nor did it give notice of its intent to do so. Nevertheless, SureShot asserted that under these circumstances, its financial backing unraveled, and its business became economically unfeasible.

2

No. 21-20132

The district court dismissed the case, holding that SureShot's claims were not ripe and that SureShot failed to plead an antitrust injury sufficient to confer antitrust standing because the alleged injuries were too speculative. *Id.* at *5. Concluding that SureShot's claims were not ripe, we affirmed. *SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 240–41 (5th Cir. 2018) (per curiam) ("*SureShot I*"), *cert. denied*, 139 S. Ct. 1330 (2019) (mem.).

SureShot filed this second action in May 2020, again alleging violations of §§ 1 and 2 of the Sherman Act and § 7 of the Clayton Act based on the theory of foreclosure and unfair competition by a monopolist. This action stems from the same set of facts that formed the basis of the complaint in *SureShot I*, but includes two "new" relevant facts in the pleadings, although they are not actually new facts. First, SureShot pleaded that the Frame Agreement included an automatic option to renew unless either party gave notice of its intent to terminate. Second, regarding the "look for alternatives" statement, SureShot added that when it "sought clarification about an extension of the license, a Topgolf executive said that no decision had been made."

Topgolf moved to dismiss for lack of jurisdiction and failure to state a claim. The district court granted Topgolf's motion, concluding that SureShot did not assert any additional facts demonstrating that SureShot's relationship with Topgolf changed since *SureShot I*. Accordingly, the district court concluded it was bound by our ripeness holding in *SureShot I*. The district court also held that SureShot failed to allege either Article III or antitrust standing. SureShot timely appealed.

No. 21-20132

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction over SureShot's claims pursuant to 28 U.S.C. §§ 1331 and 1337.  We have appellate jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

We review a Rule 12(b)(1) dismissal for lack of jurisdiction de novo. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).  A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.  *Id.* (quotation omitted).  "Lack of subject-matter jurisdiction may be found in the complaint alone."  *Id.* at 287.  A motion to dismiss for lack of subject matter jurisdiction should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."  *Id.*  SureShot bears the burden of establishing subject matter jurisdiction.  *See id.* at 286.

## III.    Discussion

SureShot is still out of business, as it was at the time of the first litigation, and its "new" allegations add nothing to the case.  The first allegation is not "new" as it was in the contract all along.  Importantly, no pleading indicates that Topgolf ever gave notice that it would terminate the Frame Agreement.  Indeed, the second "new" allegation actually is unequivocal on this point since "no decision had been made."[1]

Under the law of the case doctrine, "we follow the prior decisions in a case as the law of that case."  *Reeves v. AcroMed Corp.*, 103 F.3d 442, 448

---

[1] SureShot has failed to allege any facts demonstrating that its relationship with Topgolf has changed *at all* since *SureShot I*.  SureShot was already out of business when it filed its complaint in *SureShot I*, and nothing in the record suggests that SureShot has tried to use Protracer or exercise its rights under the Frame Agreement since that time.

(5th Cir. 1997) (quotation omitted). A subsequent panel will reexamine issues of law resolved by a prior panel opinion only if: "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Id.* (quotation omitted). None of the exceptions to the doctrine apply here.

As explained above, there is not "substantially different" evidence here that matters.[2] Additionally, there has been no change in controlling authority and SureShot fails to show that the prior panel's decision was clearly erroneous or creates manifest injustice.

Thus, the newly pleaded allegations do not alter anything material from the first case. Accordingly, we remain bound by the holding of *SureShot I* dismissing this case.[3] *See* 754 F. App'x at 241.

AFFIRMED.

---

[2] SureShot states that, following the Topgolf-Protracer acquisition, "Topgolf announced that it would license Protracer only to 'driving ranges,' not golf entertainment centers," and included a hyperlink in its complaint to the 2016 press release where Topgolf made this alleged announcement. This allegation does not cure SureShot's defective pleadings. Even assuming arguendo that a generalized statement in a press release can be interpreted as an express termination of the SureShot-Protracer Frame Agreement, SureShot misconstrued Topgolf's statement. According to the press release, Topgolf stated that it would license the technology to "driving ranges," but it did not indicate that it would license the technology to driving ranges exclusively, nor did it announce that it would refuse to license the technology to golf entertainment centers.

[3] Because we conclude that we are bound by our ripeness holding in *SureShot I*, we do not discuss whether SureShot has established Article III or antitrust standing.